IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| Ms. Denise Arnot<br>4821 47th St, NW<br>Washington, DC 20016 | * | |
| | * | |
| **Plaintiff** | * | |
| v. | * | Case No.<br>**JURY TRIAL DEMANDED** |
| Ms. Charlotte Crenson<br>Baltimore County Animal Control<br>13800 Manor Road<br>Baldwin, Maryland 21013<br>(*In her personal capacity*) | *<br><br>*<br><br>* | |
| **Defendant** | * | |

## PLAINTIFF'S COMPLAINT AND JURY TRIAL DEMAND

### INTRODUCTION, JURISDICTION AND VENUE

1. This is a civil rights case involving deprivations of rights contained in the First Amendment of the U.S. Constitution, made actionable pursuant to 42 U.S.C. § 1983; as well as violations of Maryland's Declaration of Rights.

2. The Plaintiff, Ms. Denise Arnot, is a resident of the District of Columbia (Washington, D.C.).

3. The Plaintiff sues Defendant Charlotte Crenson, Director of Animal Control for Baltimore County, Maryland, in her personal capacity. Upon information and belief, Defendant Crenson is a resident of the State of Maryland.

4. This Court has federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and diversity jurisdiction pursuant to 28 U.S.C. § 1332.

5. Venue is proper pursuant to 28 U.S.C. § 1391.

## FACTS

6. Plaintiff performs volunteer rescue coordination services for Fancy Cats Rescue Team, one of the largest and well-established feline rescue organizations in the Washington metropolitan area. Fancy Cats Rescue Team has saved thousands of cats by finding loving adoptive homes. At all times relevant to this lawsuit, Plaintiff was performing volunteer services for Fancy Cats Rescue Team. Plaintiff considers the volunteer work that she does to provide important societal benefits, and she performs this work in response to the greater moral urgency to save the lives of lost, abused, and otherwise homeless cats who face slim prospects and high euthanasia rates in area animal control facilities.

7. Although there is no shortage of cats in the D.C. Metropolitan area requiring rescue and adoption, Fancy Cats Rescue Team has been concerned about the plight of cats in Baltimore County's animal control, which has one of the highest euthanasia (if not the highest) rates for cats in the State of Maryland. Cats that fall into the custody of Baltimore County's animal control have, statistically speaking, a slight chance of survival and being adopted out.

8. For this reason, Ms. Arnot was rescuing cats from Baltimore County's animal control, which is operated by Defendant Charlotte Crenson.

9. However, all was not well. On June 2, 2013, Plaintiff wrote to Defendant complaining about the death of kittens that had been rescued from Baltimore County a short time before.

8. Specifically, Plaintiff reported to Defendant about the death of multiple kittens. Plaintiff wrote:

> "[f]or cat lovers to watch kittens die and see such sick moms is extremely disheartening. At Fancy Cats Rescue Team, we've been in the rescue business long enough to recognize that cats arriving en masse in such poor condition is arereflection (sic) of the

shelter from where they've come. This is not the first catthat (sic) we have encountered from your facility that was on death's door. And so itbegs (sic) the question: what measures are being taken on your end to prevent thisproblem? (sic)"

(Exh. 1)

9. Plaintiff went on to ask what cleaning protocols were in place, what medicines were being used to treat infection and illness, and what procedures were being used to handle fragile new born kittens. (Exh. 1). Plaintiff compared the experience of Fancy Cats Rescue Team with other area animal controls, and stated that "the level of illness from [Baltimore County Animal Control] isstaggering." (sic) (Exh. 1). Plaintiff reported that bottle baby kittens had been paired by staff from Baltimore County Animal Control with a *non-lactating* female cat (not the mother) and had literally died of starvation. (Exh. 1).

10. Plaintiff further stated that "Catsarrive (sic) healthy to your shelter and contract deadly illnesses." Plaintiff explained that very sick cats burden cat rescues, "because they shut down valuable foster homes for several weeks and slow downadoptons, (sic)" and also observed that other rescue groups were "gunshy" (sic) to work with a shelter like Baltimore County Animal Control. (Exh. 1).

11. Plaintiff further observed that adoptions were "practicallynon-existence" (sic), that rescues are afraid to work with the shelter, and that "those in chargedo (sic) not seem interested in making improvement." (Exh. 1). Plaintiff stated that "no matter how hard the staff works, "they do not have the support of those in a position of power to actually shelteranimals (sic) in theircare (sic), the systematic killing of innocent animals will not abate." Plaintiff was critical of Baltimore County's handling of the shelter, questioned whether tax dollar expenditures were being efficiently spent. (Exh. 1).

12. Plaintiff made three humble suggestions: (1) recruit volunteers; (2) boost adoptions; and (3) advertise available pets for adoption (questioning why they did not even have a Petfinder site). (Exh. 1).

13. Plaintiff, a citizen, stated these remarks, in the humblest and most respectful terms, in a non-threatening manner. She stated that she was "very concerned forthe (sic) animals in your care an am very interested to learn what is being done toimprove (sic) conditions. Forrescue (sic) groups to partner with [Baltimore County Animal Control], we need assurances that the shelter isgoing (sic) to address the issues that are causing cats to get so sick anddie (sic)." (Exh. 1).

14. Approximately four hours later, Defendant sent a short response to Plaintiff's communication. Defendant made no effort to respond at all to the substance of Plaintiff's communication, i.e., identify how Baltimore County maintains a safe and healthy environment for the cats in its care, and how it actively attempts to find foster and/or adoptive homes for the cats in its care. Instead, Defendant stated that she was "sorry" that "you had this unfortunate experience woth (sic) our shelter," and that she was "removing your organization fom (sic) our rescue partner list." (Exh. 1).

15. Plaintiff was shocked, outraged, and distressed by Defendant's response and actions in delisting Fancy Cats Rescue Team. Plaintiff pleaded with Defendant, stating that Fancy Cats Rescue Team was capable of handling sick cats, but that these cats from Baltimore County were not sick but rather dying. (Exh. 1).

16. All efforts to resolve this matter have failed. Defendant Crenson, through taxpayer provided lawyers (Baltimore County Law Department), fictitiously claims that she delisted Fancy Cats Rescue Team as an "approved" rescue because its application was not completely

filled out. This reason is a total pretext, and the real reason why Defendant Crenson delisted Fancy Cats Rescue Team is in retaliation to the exercise of Plaintiff's speech, and that speech involves matters of great public concern (the care of animals – or lack of care - in the custody of animal control).

17. Defendant terminated the rescue privileges of Fancy Cats Rescue Team in response to Plaintiff's speech, which is protected by the First Amendment of the U.S. Constitution and Maryland's Declaration of Rights.

18. After pretextually terminating the rescue privileges of Fancy Cats Rescue Team in response to Plaintiff's speech, Defendant would not restore the rescue privileges unless Fancy Cats Rescue Team agreed to waive its constitutional rights under the Fourth Amendment of the U.S. Constitution, by allowing for home inspections by Baltimore County Animal Control.

19. In all respects, Plaintiff has complied with Maryland's Local Government Tort Claims Act, Md. Ann. Cts. & Jud. Proc. §§ 5-301 *et seq.*

### COUNT I
### FIRST AMENDMENT RETALIATION – FREEDOM OF SPEECH
### 42 U.S.C. § 1983

20. Plaintiff incorporates paragraphs 1 – 19 as set forth above, and states that her actions in writing a polite letter to Defendant, who operates and controls a government agency, expressing her views and concerns about the care of animals, the misuse of public fisc, and general failure of government to operate properly and efficiently, were protected expressions regarding matters of public concern; that she spoke as a citizen, that Plaintiff's interest in First Amendment expression as a citizen outweighed any disruptive effect that her communications may have created in the operations of Baltimore County's government, and that as a result, the Plaintiff was deprived of the privilege and benefits of rescuing cats, and that a causal relationship exists

between her protected expression on matters of public concern as a citizen and the aforementioned adverse action.

21. The actions complained of herein violated the Plaintiff's right to free speech under the First Amendment of the U.S. Constitution.

**COUNT II**
**FIRST AMENDMENT RETALIATION**
**Maryland's Declaration of Rights Art. 40**

22. Plaintiff incorporates paragraphs 1 – 21 as set forth above, and states that the actions complained of herein in Count I also violated the Plaintiff's rights to free speech under Maryland's Declaration of Rights, Art. 40.

23. Malice may be inferred by, among other things, the nature of the action taken here. If Defendant was *without* malice, she could have simply responded to Plaintiff that she disagreed with Plaintiff's viewpoints (or better yet, engage in some meaningful dialogue). Instead, Defendant decided to revoke Fancy Cats Rescue Team's right to rescue cats from Baltimore County, knowing that she was hitting Plaintiff "right where it hurt," i.e., harming the Plaintiff in a very personal way as she knew that Plaintiff views these as "life and death" matters and is only motivated to perform such actions based on a moral calling to protect the welfare of animals and cats in particular. Moreover, Defendant knew that by revoking the rights, benefits and privileges of Fancy Cats Rescue Team to rescue cats, Plaintiff and *others* would be greatly distressed at the prospect that no cats would even have the prospect of survival vis-à-vis rescue by Fancy Cats Rescue Team. Finally, Defendant's malice is clear through her use of a clearly pretextual reason, and her obvious failure to substantively respond to Plaintiff's helpful suggestions. If Defendant was motivated only because there was some blank that needed to be completed in Fancy Cats Rescue Team's application, she could have (but failed to) disclose that

fact and not deliberately interrupted the rescue of cats from Baltimore County government control.

**WHEREFORE**, Plaintiff prays for Judgment:

(a) To compensate the Plaintiff for all non-economic damages incurred by the Plaintiff, including but not limited to, the humiliation, stress, grief, frustration, mental anguish, embarrassment, and loss of enjoyment of life suffered by the Plaintiff insofar as she and others that she associates with were no longer able to save the lives of cats in the custody of Baltimore County, in amounts not readily quantifiable but presently estimated at $75,000.00;

(b) Alternatively, if non-economic damages are not awarded, Plaintiff seeks nominal damages in the amount to be determined by the jury;

(c) Granting punitive damages against Defendant, *in her personal capacity*, in the amount of $1,000,000.00;

(d) Awarding Plaintiff her costs and reasonable attorney's fees in this action; and

(e) Granting such other and further relief as this Court may deem just and proper.

Respectfully submitted,

_____
Howard B. Hoffman, Esq.
Attorney at Law
Federal Bar No. 25965
600 Jefferson Plaza, Suite 304
Rockville, Maryland 20852
(301) 251-3752
(301) 251-3753 (fax)

## DEMAND FOR JURY TRIAL

The Plaintiff, by her undersigned attorney, hereby demands a jury trial as to all issues triable by a jury.

Respectfully submitted,

_____
Howard B. Hoffman