## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **Fancy Cats Rescue Team, Inc.** <br> c/o 13110 Pelfrey Lane <br> **Fairfax, Virginia 22033** | * | |
| | * | |
| and | * | |
| **Ms. Denise Arnot** <br> **4821 47th St, NW** <br> **Washington, DC 20016** | * | |
| | * | |
| and | * | |
| **Plaintiffs** | * | |
| v. | * | Case No. JKB 14-1073 <br> **JURY TRIAL DEMANDED** |
| | * | |
| **Baltimore County, Maryland** <br> **400 Washington Avenue** <br> **Towson, Maryland 21204** | * | |
| | * | |
| and | * | |
| **Ms. Charlotte Crenson** <br> **Baltimore County Animal Control** <br> **13800 Manor Road** <br> **Baldwin, Maryland 21013** <br> (*In her personal capacity*) | * | |
| | * | |
| **Defendant** | | |

## PLAINTIFFS' SECOND AMENDED COMPLAINT FOR AFFIRMATIVE INJUNCTIVE RELIEF AND MONEY DAMAGES[1]

### INTRODUCTION, JURISDICTION AND VENUE

1.  This is a civil rights case involving deprivations of rights contained in the First Amendment and Due Process Clause of the U.S. Constitution, made actionable pursuant to 42

---

[1] This Second Amended Complaint is submitted in accordance with ECF Doc. 26, directing the Plaintiffs to revise the Second Amended Complaint to be in conformity with the Court's ruling.

Page 1

U.S.C. § 1983; as well as violations of Maryland's Declaration of Rights.

2. Plaintiff Ms. Denise Arnot, is a resident of the District of Columbia (Washington, D.C.). Plaintiff Fancy Cats Rescue Team, Inc. (FCRT) is a corporation formed under the laws of the Commonwealth of Virginia, and maintains its headquarters in and operates from Virginia. Based on its primary activities in rescuing homeless and stray cats, and providing suitable adoptive homes for them, FCRT has been granted nonprofit organizational status pursuant to 26 U.S.C. § 501(c) by the Internal Revenue Service.

3. The Plaintiffs sue Defendant Charlotte Crenson, Director of Animal Control for Baltimore County, Maryland, in her personal capacity. Upon information and belief, Defendant Crenson is a resident of the State of Maryland. Defendant Crenson has referred to herself as the "Chief of the Baltimore County Animal Control division (BCAC)" and that she is "ultimately responsible for supervision of the Baltimore County Animal Shelter (BCAS)[.]" (ECF Doc. 14-2, pg. 2).

4. The Plaintiffs also sue Defendant Baltimore County, Maryland which is a local government, consisting of numerous government agencies, including Baltimore County Animal Services ("BCAS," formerly referred to as "Baltimore County Animal Control" or "BCAC"). BCAS is basically Defendant Baltimore County, Maryland's "pound" for unwanted and lost animals. Plaintiffs sues Defendant Baltimore County, Maryland under theories that it is legally responsible for the actions of Defendant Crenson in violating Plaintiffs' constitutional rights, including Plaintiffs' rights under the Maryland Declaration of Rights, and in addition, that Defendant Baltimore County, Maryland is liable for Defendant Crenson's retaliatory actions towards Plaintiffs. In addition, Plaintiffs sue Defendant Baltimore County, Maryland under a theory that Defendant Baltimore County, Maryland maintains a policy, practice, and custom of

requiring Plaintiff FCRT (along with other non-profit animal welfare/rescue organizations) to waive their Fourth Amendment rights from unreasonable search and seizure by police and government officials, in exchange for obtaining the "privilege" and "benefit" of rescuing animals in BCAS.

5. This Court has federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and diversity jurisdiction pursuant to 28 U.S.C. § 1332.

6. Venue is proper pursuant to 28 U.S.C. § 1391.

## FACTS

7. Plaintiff Arnot performs volunteer rescue coordination services for Plaintiff FCRT, one of the largest and well-established feline rescue organizations in the Washington metropolitan area. FCRT has saved thousands of cats by finding loving adoptive homes. At all times relevant to this lawsuit, Plaintiff Arnot was performing volunteer services for Plaintiff FCRT. Plaintiff Arnot considers the volunteer work that she does to provide important societal benefits, and she performs this work in response to the greater moral urgency to save the lives of lost, abused, and otherwise homeless cats who face slim prospects and high euthanasia rates in area animal control facilities.

8. Although there is no shortage of cats in the D.C. Metropolitan area requiring rescue and adoption, Fancy Cats Rescue Team has been concerned about the plight of cats in Baltimore County's animal control, which has one of the highest euthanasia (if not the highest) rates for cats in the State of Maryland. Cats and kittens that fall into the custody of Baltimore County's animal control have, statistically speaking, a slight chance of being adopted out, and hence, survival.

9. For this reason, Plaintiff Arnot – in conjunction with her role as a volunteer through

Plaintiff FCRT - was rescuing cats from Baltimore County's animal control, which is operated by Defendant Charlotte Crenson. Plaintiffs would initially learn of available cats/kittens through the networking that was done by volunteers and rescuers and the photographs placed on-line. (In response to widespread pictures of deplorable conditions disseminated by community activists who launched protests in April 2014, Baltimore County has now prohibited the photographing of animals and the facilities in which they are maintained, which is further evidence of a retaliatory motive to citizen speech and expression). When FCRT, acting through Plaintiff Arnot, determined that they had available foster space in which they could place homeless cats and kittens within their network, Plaintiff Arnot would interact with Baltimore County personnel to place cats and kittens on a "hold." Additional arrangements were then made between FCRT (including through Arnot) and other volunteers and rescue groups in the Baltimore County area, who would deliver cats and kittens to individuals whom FCRT arranges to foster the cats/kittens. The manner in which cats/kittens (as well as other animals) are delivered to available rescue fosters is akin to an "underground railroad;" i.e., an ad hoc way of transporting cats/kittens (dogs/puppies too) to rescue organizations. Thus, some persons in the rescue community are known as "transporters." Under no circumstances did Plaintiffs Arnot or FCRT rely on Baltimore County government personnel to deliver them any animals. Moreover, at no time did Plaintiffs Arnot or FCRT demand that Baltimore County personnel transport cats/kittens to them or any other person. This underground railroad is the life-saving relief line for animals at Baltimore County's animal services, but as demonstrated by the facts giving rise to this lawsuit, the ability to save pets depends on Defendant granting rescuers the privilege of rescuing animals from Baltimore County.

10.     Plaintiffs received cats/kittens (through a network of volunteers, which were delivered

to their fosters), but soon realized that all was not well. On June 2, 2013, Plaintiff Arnot, as a representative of FCRT, wrote to Defendant complaining about the death of kittens that had been rescued from Baltimore County a short time before.

11. Specifically, Plaintiff Arnot reported to Defendant about the death of multiple kittens. Plaintiff Arnot wrote:

> "[f]or cat lovers to watch kittens die and see such sick moms is extremely disheartening. At Fancy Cats Rescue Team, we've been in the rescue business long enough to recognize that cats arriving en masse in such poor condition is arereflection (sic) of the shelter from where they've come. This is not the first catthat (sic) we have encountered from your facility that was on death's door. And so itbegs (sic) the question: what measures are being taken on your end to prevent thisproblem? (sic)"
>
> (Exh. 1)

12. Plaintiff Arnot went on to ask what cleaning protocols were in place, what medicines were being used to treat infection and illness, and what procedures were being used to handle fragile new born kittens. (Exh. 1). Plaintiff Arnot compared the experience of Fancy Cats Rescue Team with other area animal controls, and stated that "the level of illness from [Baltimore County Animal Control] isstaggering." (sic) (Exh. 1). Plaintiff Arnot reported that bottle baby kittens had been paired by staff from Baltimore County Animal Control with a *non-lactating* female cat (not the mother) and had literally died of starvation. (Exh. 1).

13. Plaintiff Arnot further stated that "Catsarrive (sic) healthy to your shelter and contract deadly illnesses." Plaintiff Arnot explained that very sick cats burden cat rescues, "because they shut down valuable foster homes for several weeks and slow downadoptons, (sic)" and also observed that other rescue groups were "gunshy" (sic) to work with a shelter like

Baltimore County Animal Control. (Exh. 1).

14. Plaintiff Arnot further observed that adoptions were "practicallynon-existence" (sic), that rescues are afraid to work with the shelter, and that "those in chargedo (sic) not seem interested in making improvement." (Exh. 1). Plaintiff Arnot stated that "no matter how hard the staff works, "they do not have the support of those in a position of power to actually shelteranimals (sic) in theircare (sic), the systematic killing of innocent animals will not abate." Plaintiff was critical of Baltimore County's handling of the shelter, questioned whether tax dollar expenditures were being efficiently spent. (Exh. 1).

15. Plaintiff Arnot made three humble suggestions: (1) recruit volunteers; (2) boost adoptions; and (3) advertise available pets for adoption (questioning why they did not even have a Petfinder site). (Exh. 1).

16. Plaintiff Arnot, a citizen, stated these remarks, in the humblest and most respectful terms, in a non-threatening manner. Plaintiff Arnot stated that she was "very concerned forthe (sic) animals in your care an am very interested to learn what is being done toimprove (sic) conditions. Forrescue (sic) groups to partner with [Baltimore County Animal Control], we need assurances that the shelter isgoing (sic) to address the issues that are causing cats to get so sick anddie (sic)." (Exh. 1).

17. Approximately four hours later, Defendant sent a short response to Plaintiff Arnot's communication. Defendant made no effort to respond at all to the substance of Plaintiff Arnot's communication, i.e., identify how Baltimore County maintains a safe and healthy environment for the cats in its care, and how it actively attempts to find foster and/or adoptive homes for the cats in its care. Instead, Defendant stated that she was "sorry" that "you had this unfortunate experience woth (sic) our shelter," and that she was "removing your organization fom (sic) our

rescue partner list." (Exh. 1).

18. Plaintiff Arnot was shocked, outraged, and distressed by Defendant's response and actions in delisting Fancy Cats Rescue Team. Plaintiff Arnot pleaded with Defendant, stating that Fancy Cats Rescue Team was capable of handling sick cats, but that these cats from Baltimore County were not sick but rather dying. (Exh. 1).

19. All efforts to resolve this matter have failed. Defendant Crenson, through taxpayer provided lawyers (Baltimore County Law Department) has fictitiously claimed that she delisted Fancy Cats Rescue Team as an "approved" rescue because its application was not completely filled out. This reason is a total pretext, and the real reason why Defendant Crenson delisted FCRT is in retaliation to the exercise of Plaintiffs' speech, and that speech involves matters of great public concern (the care of animals – or lack of care - in the custody of animal control).

20. Defendant terminated the rescue benefits and privileges of FCRT in response to Plaintiff Arnot's speech, which is protected by the First Amendment of the U.S. Constitution and Maryland's Declaration of Rights. Plaintiff FCRT was injured in fact by Defendant's decision to eliminate its rescue privileges. Plaintiff FCRT was forced to retain legal counsel to gain legal redress of its injury (loss of rescue benefits and privileges).

21. In terminating the rescue benefits and privileges of Plaintiff FCRT, Plaintiff Arnot suffered an injury-in-fact, insofar as the adverse regulatory action (loss of rescue benefits): (a) serves to chill a reasonable member of the rescue community, of ordinary firmness, from engaging in further criticism of shelter operations, because such a person would believe that they too would have their privileges restricted by Defendant; (b) would have forced Plaintiff Arnot to disassociate herself from Plaintiff FCRT (if left unchallenged), a freedom of association itself protected by the First Amendment, if she wanted to engage in cat/kitten rescue

in Baltimore County; (c) injured Plaintiff FCRT, a volunteer nonprofit group that Plaintiff Arnot assists and associates with, based on Defendant's decision to eliminate FCRT's rescue privileges in retaliation for Plaintiff Arnot's speech; (d) injured Plaintiff Arnot insofar as she suffered emotional distress as a result of Defendant's unlawful action, as Plaintiff Arnot (and others rescue persons of ordinary firmness) would have been disturbed to think that cats/kittens are being euthanized and not rescued based on her speech and the resulting withdrawal of rescue privileges for Plaintiff FCRT (the emotional distress intensified by the concomitant fact that there are few - if any – cat rescue organizations able to work with Baltimore County based on the County's (Defendant's) poor relations with rescues, the poor health of its animals, and the lack of networking by Defendant); (e) injured Plaintiff Arnot insofar as she would have reasonably believed that her association with some *other* rescue group would jeopardize and harm the interests of that *other* rescue group with the Defendant, all based on Plaintiff Arnot's speech; and (f) Plaintiff Arnot was injured insofar as she would have been forced to affiliate with some other nonprofit group, based on Defendant's reaction to her protected speech, if she wanted to continue to rescue cats/kittens from Baltimore County's animal services (its public "pound"). Plaintiff Arnot was essentially denied the right to criticize Baltimore County's operation of its animal shelter. A judgment from this Court, even by declaratory judgment with nominal damages, that the constitutional rights of the Plaintiffs have been violated will serve to deter Defendant and other government officials and will also redress the chilling effect of the adverse regulatory actions taken by the Defendant, on behalf of Baltimore County.

22. After pretextually terminating the rescue privileges of Plaintiff FCRT in response to Plaintiff Arnot's speech, Defendant would not restore the rescue privileges unless FCRT agreed to waive its constitutional rights under the Fourth Amendment of the U.S. Constitution, by

allowing for home inspections by Baltimore County Animal Control. Specifically, Defendants required Plaintiff FCRT to execute an agreement containing the following material term: "With reasonable notice, Baltimore County Animal Control may inspect any facility or home where animals are housed to determine health and proper care. Denial of entry or failure to cooperate constitutes a violation of this agreement."

23. In all respects, Plaintiffs have complied with Maryland's Local Government Tort Claims Act, Md. Ann. Cts. & Jud. Proc. §§ 5-301 *et seq*.

## COUNT I
### FIRST AMENDMENT RETALIATION – FREEDOM OF SPEECH
### 42 U.S.C. § 1983
### (PLAINTIFFS FCRT AND ARNOT VS. CRENSON)

24. Plaintiffs incorporate paragraphs 1 – 23 as set forth above, and state that Plaintiff Arnot's actions in writing a polite letter to Defendant, who operates and controls a government agency, expressing her views and concerns about the care of animals, the misuse of public fisc, and general failure of government to operate properly and efficiently, were protected expressions regarding matters of public concern; that Plaintiff Arnot, on behalf of herself and Plaintiff FCRT, spoke as a citizen, that Plaintiffs' interest in First Amendment expression as a citizen outweighed any disruptive effect that her communications may have created in the operations of Baltimore County's government, and that as a result, Plaintiffs were deprived of the privilege and benefits of rescuing cats/kittens, and that a causal relationship exists between Plaintiffs' protected expression on matters of public concern as a citizen and the aforementioned adverse action.

25. The actions complained of herein violated the Plaintiffs' right to free speech under the First Amendment of the U.S. Constitution.

## COUNT II
## RETALIATION
## MARYLAND'S DECLARATION OF RIGHTS ART. 40
## (PLAINTIFFS FCRT AND ARNOT VS. CRENSON)

26. Plaintiffs incorporate paragraphs 1 – 25 as set forth above, and state that the actions complained of herein in Count I also violated the Plaintiffs' rights to free speech under Maryland's Declaration of Rights, Art. 40.

27. Malice may be inferred by, among other things, the nature of the action taken here. If Defendant was *without* malice, she could have simply responded to Plaintiff Arnot that she disagreed with Plaintiff's viewpoints (or better yet, engaged in some meaningful dialogue). Instead, Defendant decided to revoke Fancy Cats Rescue Team's right to rescue cats from Baltimore County, knowing that she was hitting Plaintiff Arnot "right where it hurt," i.e., harming Plaintiff Arnot in a very personal way as she knew that Plaintiff Arnot views these as "life and death" matters and is only motivated to perform such actions based on a moral calling to protect the welfare of animals and cats in particular. Moreover, Defendant knew that by revoking the rights, benefits and privileges of FCRT to rescue cats, Plaintiff and *others* would be greatly distressed at the prospect that no cats would even have the prospect of survival vis-à-vis rescue by FCRT. Finally, Defendant's malice is clear through the use of a clearly pretextual reason, and her obvious failure to substantively respond to Plaintiff's helpful suggestions. If Defendant was motivated only because there was some blank that needed to be completed in FCRT's application, she could have (but failed to) disclose that fact and not deliberately interrupted the rescue of cats from Baltimore County government control. Instead of resolving the underlying complaints that Plaintiff Arnot had, after terminating the rescue privileges, Defendant Crenson told her supervisor that she was suspicious of Plaintiffs and that she would "dig deeper" into their background.

## COUNT III
### RETALIATION
### MARYLAND'S DECLARATION OF RIGHTS ART. 40
### (PLAINTIFFS FCRT AND ARNOT VS. BALTIMORE COUNTY, MARYLAND)

28. Plaintiffs incorporate paragraphs 1 – 27 as set forth above, and state that Baltimore County, Maryland is liable under a theory of respondeat superior for the actions of Defendant Crenson, who retaliated against Plaintiffs based on their right to free speech, as provided under Maryland's Declaration of Rights, Art. 40.

## COUNT IV
### FIRST AMENDMENT RETALIATION – FREEDOM OF SPEECH
### 42 U.S.C. § 1983
### (PLAINTIFFS FCRT AND ARNOT VS. BALTIMORE COUNTY, MARYLAND)

29. Plaintiffs incorporates paragraphs 1 – 28 as set forth above, and states that Baltimore County, Maryland, pursuant to a policy, practice, and custom of engaging in widespread viewpoint discrimination against members of the public who are critical of the operations of BCAS, such as enforcing a photograph ban of the premises and animals sheltered at BCAS, and their practice of intimidating the public and preventing the public from obtaining information concerning BCAS, is liable for the actions of its policy and decision maker, Defendant Crenson, who has ultimate responsibility for the supervision of BCAS, based on Defendant Baltimore County, Maryland's awareness of, participation in, authorizing Defendant Crenson, or otherwise condoning the constitutional violations alleged herein by Plaintiffs, and that the complained of policies, practices and customs manifested themselves in the tangible retaliatory actions taken against the Plaintiffs FCRT and Arnot, which violated the rights of this Plaintiffs to speak publicly regarding the functioning and activities of an agency of Defendant Baltimore County, Maryland government, and that this policy, practice, custom, rule and regulation of BCAS punishes expressions of speech and grievance petitions, regardless of whether the

information made public as part of the speech or by the grievance petition is confidential or otherwise burdens government operations in such a way that might otherwise permit regulation of speech. Defendant Baltimore County, Maryland not only countenances Defendant Crenson's retaliation against the Plaintiffs, but they join in and approve of it by banning members of the public from photographing the conditions of animals at BCAS otherwise intimidating rescues, and intimidating rescue groups by requiring them to relinquish their Fourth Amendment rights if the seek to rescue homeless animals from Baltimore County.

30. There exists a causal relationship between Plaintiffs' protected free speech, and the policies, practices, customs, rules and regulations of Baltimore County, Maryland, both written and unwritten, and the retaliation directed against Plaintiffs.

31. Accordingly, because the constitutionally offensive act of Defendant Crenson in terminating the rights of the Plaintiffs to rescue cats from BCAS was ostensibly taken pursuant to some policy, practice, custom, rule and regulation allowed, authorized, and set by Baltimore County, Maryland, Defendant Baltimore County, Maryland is liable to the Plaintiffs for the actions complained of herein, committed by Defendant Crenson who has ultimate responsibility for the supervision of BCAS.

<u>COUNT V
UNCONSTITUTIONAL CONDITIONS
42 U.S.C. § 1983
(PLAINTIFF FCRT VS. BALTIMORE COUNTY, MARYLAND)</u>

32. Plaintiff FCRT incorporates paragraphs 1 – 31 as set forth above, and states that Baltimore County, Maryland, pursuant to a policy, practice, and custom of intimidating the public and preventing the public from obtaining information critical of the operations of BCAS, requires that FCRT and other rescue groups, and other animal rescuers, agree to waive crucial protections afforded under the Fourth Amendment of the United States Constitution, to be free

from unlawful search and seizure, in order to be approved as an animal rescue organization and receive cats and/or other animals from BCAS. FCRT has been forced to sign the rescue agreement with its unconstitutional condition.

33. Defendant Baltimore County, Maryland's specific policy and practice of requiring that animal rescue organizations waive their Fourth Amendment rights and allow warrantless home inspections is an unconstitutional condition and violates the Fourth Amendment and Due Process Clause of the United States Constitution. It is a policy and practice intended to control and intimidate the very members of the public who have the most information concerning the appalling and dreadful conditions in BCAS. The threat of home inspections is used like the "Sword of Damocles" that hangs over the Plaintiffs' head, and other rescue organizations, their fosters, and their volunteers: "if you speak out they will come for you." There is an inter-relatedness between the terrorizing effects of the retaliatory acts committed against Defendants FCRT and Crenson, the ban on photograph of the BCAS shelter, and the threat of home inspections. Indeed, immediately after Defendant FCRT was removed as an "approved" rescue, and Defendant Crenson complained to Baltimore County officials, the very first thing that BCAS officials did, including Defendant Crenson, was to discuss their ability to engage in warrantless home inspections against Defendants within the Commonwealth of Virginia.

34. Defendant Baltimore County, Maryland does not establish this power out of some care or concern for the animals, as it will adopt out animals to persons convicted of animal abuse and neglect. Indeed, Baltimore County, Maryland conducts no meaningful investigation into potential adopters and no follow-up whatsoever to make sure that animals are not sold to laboratories or dog fighters. Rather, Defendant Baltimore County, Maryland uses the power to inspect the homes of animal rescuers in an intimidating manner, and has no substantial or

compelling interest requiring homes to be inspected without probable cause.

35. Even assuming arguendo that Defendant Baltimore County, Maryland has some interest in inspecting the homes of animal rescuers, it may apply for a warrant from a Court rather require rescuers to waive Fourth Amendment rights that are implicit in the concept of ordered liberty. Defendant Baltimore County, Maryland's interests are statutorily limited with respect to the animals released from its care.

36. The actions complained of herein violated the Plaintiffs' right to be free from government action infringing on cherished rights protected by the Fourth Amendment of the U.S. Constitution. By requiring rescuers, including "fosters" to submit to home inspections, Defendant Baltimore County, Maryland infringes on the First Amendment rights of rescue organizations to freely associate with other persons, as these unconstitutional conditions plainly burden and make association with these rescue groups unattractive to all persons who do not want the government entering into and rummaging through their home without warrant.

**COUNT VI**
**RETALIATION**
**MARYLAND'S DECLARATION OF RIGHTS ART. 24**
**(PLAINTIFFS VS. BALTIMORE COUNTY, MARYLAND)**

37. Plaintiffs incorporate paragraphs 1 – 36 as set forth above, and state that Baltimore County, Maryland is liable under a theory of respondeat superior for the actions of Defendant Crenson and others, who requires animal rescue organizations, including the Plaintiffs, to waive their Fourth Amendment rights under the U.S. Constitution in exchange for the receipt of rescue privileges from BCAS, as this is a violation of Plaintiffs' fundamental rights to Due Process, protected under Maryland's Declaration of Rights, Art. 24.

**WHEREFORE**, Plaintiffs prays for Judgment:

(a)   To compensate the Plaintiff Arnot for all non-economic damages incurred by Plaintiff Arnot, including but not limited to, the humiliation, stress, anger, grief, frustration, mental anguish, embarrassment, and loss of enjoyment of life suffered by Plaintiff Arnot, insofar as she and others that she associates with were no longer able to save the lives of cats in the custody of Baltimore County, in amounts not readily quantifiable but presently estimated at $75,000.00;

(b)   Alternatively, if non-economic damages are not awarded, Plaintiff Arnot seeks nominal damages in the amount to be determined by the jury;

(c)   To compensate Plaintiff FCRT for at least nominal damages, to be determined by a jury;

(d)   For a declaration (declaratory judgment) that the constitutional rights of the Plaintiffs were violated, including a declaration that certain provisions of the rescue agreement forced upon rescues like FCRT are unconstitutional and void;

(e)   The granting of an affirmative injunction against Defendants from requiring Plaintiffs, and other animal rescues, from having to waive their Fourth Amendment rights as a condition for receiving rescue privileges from BCAS;

(f)   Granting punitive damages against Defendant Crenson, *in her personal capacity*, in the amount of $1,000,000.00;

(g)   Awarding Plaintiffs their costs and reasonable attorney's fees in this action; and

(h)   Granting such other and further relief as this Court may deem just and proper.

Respectfully submitted,

_//s//_ _Howard Hoffman_
Howard B. Hoffman, Esq.
Attorney at Law
Federal Bar No. 25965
600 Jefferson Plaza, Suite 304
Rockville, Maryland 20852
(301) 251-3752
(301) 251-3753 (fax)

## **DEMAND FOR JURY TRIAL**

The Plaintiffs, by their undersigned attorney, hereby demands a jury trial as to all issues triable by a jury.

Respectfully submitted,

_//s//_ _Howard Hoffman_
Howard B. Hoffman

**CERTIFICATE OF SERVICE**

I hereby certify that on this 4th day of November, 2014, a copy of the foregoing COURT-ORDERED REVISED Second Amended Complaint, with Exhibits, was filed via the Electronic Case Filing System (ECF) maintained by the U.S. District Court for the District of Maryland, and is available for viewing and downloading from the ECF system.

                                         //s// *Howard Hoffman*
                                         Howard B. Hoffman