# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

FANCY CATS RESCUE        *

TEAM, INC., *et al*,        *

    **Plaintiffs**        *

    **v.**        *       **CIVIL NO. JKB-14-1073**

       *

**CHARLOTTE CRENSON**, *et al*,        *

    **Defendants**        *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## <u>MEMORANDUM</u>

Denise Arnot ("Arnot") brought this suit against Charlotte Crenson ("Crenson") alleging retaliation in violation of Arnot's right to free speech under the First Amendment of the United States Constitution and under Article 40 of Maryland's Declaration of Rights. Arnot later amended her complaint to add a new Plaintiff, Fancy Cats Rescue Team, Inc. ("FCRT," and collectively with Arnot, "Plaintiffs").[1] (ECF No. 8.) Now pending before the Court is Crenson's motion for summary judgment (ECF No. 14), Plaintiffs' motion to strike (ECF No. 15), and Plaintiffs' motion for leave to file a supplemental affidavit, (ECF No. 23). The issues have been briefed,[2] and no hearing is required, Local Rule 105.6. For the reasons explained below, Crenson's motion for summary judgment will be DENIED, Plaintiffs' motion to strike will be DENIED, and Plaintiffs' motion for leave to file a supplemental affidavit will be DENIED.

---

[1] Plaintiffs have since amended their complaint a second time, adding new claims and a new defendant. (ECF No. 27.) This memorandum and order addresses only those parties and claims included in Plaintiffs' first amended complaint. (*See* ECF No. 8.)

[2] The motion for summary judgment was briefed in ECF Nos. 14, 19, and 21; the motion to strike was briefed in ECF Nos. 15 and 16; the motion to file a supplemental affidavit was briefed in ECF Nos. 23, 24, and 25.

## A.     BACKGROUND[3]

FCRT is a Virginia-based animal rescue organization that serves the Washington metropolitan area, and Arnot is an FCRT volunteer.  FCRT's mission is to save cats from harm, in part by rescuing cats from animal control facilities that are known to have high euthanasia rates.  FCRT identified Baltimore County's animal control agency ("Animal Control") as a regional facility with unusually high euthanasia rates.  Through Arnot, FCRT initiated a rescue partnership with Animal Control in May 2013 whereby volunteer drivers would transport cats from Animal Control to FCRT.  FCRT would then place these rescued animals into foster homes.  Unfortunately, FCRT's partnership with Animal Control deteriorated within weeks of its inception.

On June 2, 2013, Arnot e-mailed Animal Control to complain that multiple cats had arrived sick at FCRT, and some cats later died.  (*See* ECF No. 8-1.)  In relevant part, the e-mail states that "[f]orcat [sic] lovers to watch kittens die and see such sick moms is extremelydisheartening [sic].  At Fancy Cats Rescue Team, we've been in the rescue businesslong [sic] enough to recognize that cats arriving en masse in such poor condition is areflection [sic] of the shelter from where they've come."  (*Id.* at 2.)  Arnot's e-mail then suggested specific improvements that Animal Control could implement to address Arnot's stated concerns.  Arnot closed her e-mail by explaining that "[f]orrescue [sic] groups to partner with [Animal Control], we need assurances that the shelter isgoing [sic] to address the issues that are causing cats to get so sick anddie [sic].  It has to be a team effort.  We cannot carry the burden alone."  (*Id.* at 3.)

---

[3] For the purposes of Crenson's motion for summary judgment, the Court here recounts the facts in the light most favorable to Plaintiffs, the opposing parties.  *See Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008).

Within hours, Arnot received a response from Crenson, the Director of Animal Control. Crenson first apologized for Arnot's "unfortunate experience," but went on to remove FCRT from Animal Control's "rescue partner list."  Crenson explained that she was "more comfortable working with partners who are able to select their rescue candidates in person."  (*Id.* at 1.) Animal Control has since revisited its decision to terminate FCRT as a rescue partner on multiple occasions.  (*See* ECF No. 19 at 10-12.)   Ultimately, however, Crenson's decision on June 2 serves as the basis for this lawsuit.

On July 24, before any discovery had begun, Crenson filed both her answer to the amended complaint (ECF No. 13) as well as the instant motion for summary judgment, (ECF No. 14).  Plaintiffs have since filed a motion to strike evidence from Crenson's affidavit in support of her motion for summary judgment (ECF No. 15), as well as a motion for leave to file a supplemental Rule 56(d) affidavit, (ECF No. 23).

## B.    CRENSON'S MOTION FOR SUMMARY JUDGMENT (ECF No. 14)

Crenson raises four distinct arguments in her motion for summary judgment: First, that Plaintiffs lack standing; second, that there is no genuine issue of material fact, and that Crenson did not unlawfully retaliate in violation of the U.S. Constitution or Maryland's Declaration of Rights; third, that Crenson is entitled to qualified immunity; and finally, that Plaintiffs' claim for punitive damages should be dismissed.  The Court addresses each argument.

### 1.   Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing predecessor to current Rule 56(a)).  The burden is on the moving party to demonstrate the absence of any

genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, the "mere existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat a motion for summary judgment. *Id.* at 252. The facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to the opposing party, *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008), who may not rest upon the mere allegations or denials of his pleading but instead must, by affidavit or other evidentiary showing, set out specific facts showing a genuine dispute for trial, Fed. R. Civ. P. 56(c)(1). Supporting and opposing affidavits are to be made on personal knowledge, contain such facts as would be admissible in evidence, and show affirmatively the competence of the affiant to testify to the matters stated in the affidavit. Rule 56(c)(4).

Pursuant to Fed. R. Civ. P. 56(d), a court may allow a nonmoving party additional time to take discovery if the nonmovant "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). In particular, where the nonmovant has not been afforded an opportunity to take discovery, Rule 56(d) "is designed to safeguard against a premature or improvident grant of summary judgment." *Pasternak v. Lear Petrol. Exploration, Inc.*, 790 F.2d 828, 833 (10th Cir. 1986); *see also Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 246-47 (4th Cir. 2002) ("[S]ummary judgment prior to discovery can be particularly inappropriate when a case involves complex factual questions about intent and motive.").

### 2.  Plaintiffs' Standing to Sue

A plaintiff's standing to sue in federal court is "an integral component of the case or controversy requirement" of Article III.  *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006).  To have Article III standing, "[t]he plaintiff must have suffered or be imminently threatened with a concrete and particularized 'injury in fact' that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable judicial decision." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377, 1386, (2014).

Arnot and FCRT both have standing to sue in the instant action.  Crenson contends that Plaintiffs' allegedly lost "privilege of 'rescuing' animals from a county shelter" does not qualify as an injury in fact.  Crenson incorrectly frames Plaintiffs' alleged injury, however.  Plaintiffs assert that their freedom of speech was unlawfully violated when Crenson rescinded Plaintiffs' privilege of rescuing cats, *in retaliation for* Arnot's protected speech.  The distinction is subtle, but crucial.  In the alternative, Crenson argues that Plaintiffs have raised nothing more than a *de minimis* injury.  Crenson does not cite, and the Court does not find, any law that requires more than a *de minimis* injury to support Article III standing.  Regardless, the Court finds that Plaintiffs have alleged the violation of a constitutional right, as discussed *infra* Section B.3— far more than a *de minimis* injury.

Thus, Plaintiffs have standing to sue in federal court.

### 3.  The Merits of Plaintiffs' Retaliation Claims

Plaintiffs assert retaliation claims under the First Amendment of the U.S. Constitution and under Article 40 of Maryland's Declaration of Rights.  The rights asserted may be analyzed similarly under federal and Maryland law.  *See Peroutka v. Streng*, 695 A.2d 1287, 1291 (Md. Ct. Spec. App. 1997).

A viable claim for First Amendment retaliation by a public official includes three elements: (1) the plaintiff engaged in activity protected under the First Amendment; (2) the defendant's alleged retaliatory action adversely affected the plaintiff's First Amendment activity; and (3) a causal relationship exists between the plaintiff's First Amendment activity and the defendant's retaliatory action. *See Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685-86 (4th Cir. 2000).

Crenson concedes Element #1: Plaintiffs engaged in activity protected under the First Amendment when Arnot complained about the conditions at Animal Control's facility. (ECF No. 14-1 at 14.)  Crenson contends, however, that she is entitled to summary judgment because no reasonable jury could find that Plaintiffs' claims succeed on Element #2—the "adverse act" requirement—or Element #3—the "causation" requirement.  Crenson has failed to meet her burden on this early dispositive motion, and the Court finds that summary judgment is premature because Plaintiffs have not yet been afforded an opportunity for discovery. *See* Fed. R. Civ. P. 56(d).

 "A retaliation claim under 42 U.S.C. § 1983 must establish that the government responded to the plaintiff's constitutionally protected activity with conduct or speech that would chill or adversely affect his protected activity." *Balt. Sun Co. v. Ehrlich*, 437 F.3d 410, 416 (4th Cir. 2006).  This determination is an objective one, i.e., "whether a similarly situated person of 'ordinary firmness' reasonably would be chilled by the government conduct in light of the circumstances presented in the particular case." *Id.*

A reasonable jury could find that Crenson committed an adverse act—within the meaning of Element #2—when she terminated Plaintiffs' partnership with Animal Control.  Crenson raises two challenges to this finding: (1) that the First Amendment categorically does not protect

any person's right to rescue cats; and (2) that alternatively and more specifically, a similarly situated person of ordinary firmness would not be chilled by Crenson's act.

Crenson first conflates the standard for a procedural due process claim and a first amendment retaliation claim when she argues that Plaintiffs have no sufficient "claim of entitlement" to rescue cats. (ECF No. 21 at 8; *see also id.* at 7-8 (citing caselaw pertaining to procedural due process claims).) Plaintiffs' First Amendment retaliation claim is "[u]nlike a procedural due process claim, for which one would need to decide whether [Plaintiffs] had a 'protected property interest' " in their partnership with Animal Control. *Mosely v. Bd. Of Educ.*, 434 F.3d 527, 534 (7th Cir. 2006); *see also ACLU v. Wicomico Cnty., Md.*, 999 F.2d 780, 786 n.6 (4th Cir. 1993) (An adverse act need not deprive a plaintiff of a constitutional right because "[s]uch a rule would make a cause of action for retaliation wholly redundant of the protections provided by the Constitution itself."). Instead, a First Amendment retaliation claim asks simply whether a state actor has deprived a plaintiff of a "valuable government benefit." *DiMeglio v. Haines*, 45 F.3d 790, 806 (4th Cir. 1995). The Supreme Court "has made clear that even though a person has no 'right' to a valuable government benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech." *Perry v. Sindermann*, 408 U.S. 593, 597 (1972).

Crenson then mischaracterizes the valuable government benefit at issue. It is not Plaintiffs' right to rescue cats that qualifies as a valuable government benefit, but more broadly Plaintiffs' opportunity to serve as a volunteer or partner with a government organization. In *Goldstein v. Chestnut Ridge Volunteer Fire Co.*, the Fourth Circuit held that status as a

government volunteer constitutes a valuable government benefit, explaining that it "makes no difference that Goldstein was a *volunteer* fireman; he has been stripped of the powers, rights, and obligations heaped upon members of Chestnut Ridge." *Goldstein v. Chestnut Ridge Volunteer Fire Co.*, 218 F.3d 337, 356 (4th Cir. 2000) (finding that Goldstein, a volunteer fireman, had been adversely affected when he was suspended and later terminated from the volunteer fire department); *see also Hyland v. Wonder*, 972 F.2d 1129, 1135-36 (9th Cir. 1992) (listing the many benefits associated with volunteer work).   Nonetheless, while Plaintiffs' status as something akin to government volunteers does not bar their retaliation claims categorically, Plaintiffs must still satisfy all of the requirements of Element #2.

The key inquiry on Element #2 is "whether a similarly situated person of 'ordinary firmness' reasonably would be chilled by the government conduct in light of the circumstances presented in the particular case." *Balt. Sun*, 437 F.3d at 416.   "Determining whether a plaintiff's First Amendment rights were adversely affected by retaliatory conduct is a fact intensive inquiry that focuses on the status of the speaker, the status of the retaliator, the relationship between the speaker and the retaliator, and the nature of the retaliatory acts." *Suarez*, 202 F.3d at 686.   The parties have raised myriad factual disputes on this issue, and therefore summary judgment is premature and improvident at this early stage of litigation before any discovery has taken place.

At first blush, Plaintiffs appear to show that Crenson committed an adverse act by terminating Plaintiffs' relationship with Animal Control.   The Fourth Circuit has catalogued examples of acts that qualify as "adverse" under Element #2: dismissal, refusals to rehire, and decisions relating to promotion, transfer, recall, and hiring.   *See id.*; *DiMeglio*, 45 F.3d at 806. The *Suarez* court also distinguished those acts that do not satisfy Element #2, such as "criticism, false accusations, or verbal reprimands."   *Suarez*, 202 F.3d at 686.   Crenson's decision to

"discontinue working with" Plaintiffs appears to fall safely into the former category—an adverse act.[4]

That said, it remains unclear whether Plaintiffs' organization was truly barred from working with Animal Control.  Within ten days after Crenson sent the challenged June 2013 e-mail, she offered to consider reinstating Plaintiffs as a rescue partner provided that Plaintiffs first signed a rescue agreement.  (ECF No. 19-8 ¶ 1.)  Perhaps even more significant, Arnot admits that "[s]ince being banned, we have assisted in rescuing cats from [Animal Control] in conjunction with other rescues."  (*Id.* ¶ 3.)  These facts introduce pivotal questions, such as: How did Crenson communicate her offer to reinstate FCRT to the Plaintiffs?  Why did Plaintiffs not accept this offer?  Under what circumstances do Plaintiffs continue to rescue cats from Animal Control, and why does this arrangement fail to resolve the instant conflict?  Discovery is necessary to determine the extent to which these facts would impact whether a similarly situated person of "ordinary firmness" reasonably would be chilled by Crenson's conduct.  On the record, the Court is dubious that Plaintiffs have indeed suffered an adverse act under Element #2, particularly when Arnot concedes that she continued to work with Animal Control *after* Crenson sent the June 2013 e-mail.  Still, the Court is not prepared to make such a determination as a matter of law without proper discovery.

The Court finds similar need for discovery on Element #3, the causation requirement.  "[T]he causation requirement is rigorous; it is not enough that the protected expression played a

---

[4] Crenson argues that Plaintiffs merely suffered a *de minimis* injury for "being temporarily removed from the approved rescue list."  (ECF No. 14-1 at 16.)  Crenson relies primarily on *ACLU*, 999 F.2d 780, which stands for the proposition that a state actor's withdrawal of a special accommodation "is not sufficiently adverse . . . to constitute retaliation" under the First Amendment. *Id.* at 785.  The Court notes that Plaintiffs would have a relatively weak case had Crenson merely removed a special accommodation.  For example, this case would be markedly different had Crenson required Plaintiffs to visit the shelter personally before rescuing cats rather than allowing the use of volunteer drivers, or had Crenson required that Plaintiffs "provide their contact information and proper corporate authorization," (ECF No. 14-1 at 16).  But that is not the case before the Court.  The allegation here is that Crenson *terminated* the relationship between Plaintiffs and Animal Control, a significant act that strengthens Plaintiffs' case compared to the hypothetical removal of a mere special accommodation.

role or was a motivating factor in the retaliation; claimant must show that 'but for' the protected expression the [government official] would not have taken the alleged retaliatory action." *Tobey v. Jones*, 706 F.3d 379, 390 (4th Cir. 2013) (alterations in original) (internal quotation marks omitted).  Plaintiffs have identified many, seemingly conflicting, explanations that Crenson has offered to justify her decision terminating Plaintiffs as rescue partners.  (*See* ECF No. 19 at 10-12.)  While the causation requirement is rigorous, these competing narratives present a genuine dispute of material fact.

For these reasons, summary judgment is premature.  This finding is especially warranted given Plaintiffs' inclusion of an affidavit pursuant to Fed. R. Civ. P. 56(d), which requests additional time for discovery before a dispositive judgment.  (ECF No. 19-7.)

### 4.  **Qualified Immunity**

Qualified immunity provides immunity from suit, not merely a defense to liability. *Pearson v. Callahan*, 555 U.S. 223, 237 (2009).  Consequently, resolution of this issue should be made " 'at the earliest possible stage in litigation.' "  *Id.* at 232 (citation omitted).  Qualified immunity turns on two inquiries: (1) "whether the facts that a plaintiff has alleged . . . or shown . . . make out a violation of a constitutional right," and (2) "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct."  *Id.*  A defendant is entitled to qualified immunity "unless the official's conduct violated a clearly established constitutional right."  *Id.*

The Court first finds that Plaintiffs have alleged the violation of a constitutional right for the reasons stated above, *supra* Section B.3: the right to exercise constitutionally protected speech, free of a state actor's retaliatory adverse act.

Further, the Court finds that the allegedly violated constitutional right was clearly established at the time Crenson terminated the relationship between Plaintiffs and Animal Control, in June 2013. "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (citations omitted). To be "clearly established," "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Id.* at 640 (citations omitted). The right claimed by a plaintiff to have been violated "must be defined at the appropriate level of specificity before a court can determine if it was clearly established." *Wilson v. Layne*, 526 U.S. 603, 615 (1999).

For over a decade, it has been clearly established in the Fourth Circuit that dismissal from one's job, "failure to rehire, a denial of promotion, or a denial of a transfer, may constitute a deprivation of a valuable government benefit." *DiMeglio v. Haines*, 45 F.3d 790, 806 (4th Cir. 1995). It has also been clearly established that Plaintiffs' status as something akin to government volunteers makes no difference in our analysis. *Goldstein v. Chestnut Ridge Volunteer Fire Co.*, 218 F.3d 337, 356 (4th Cir. 2000). With these precedents in mind, in June 2013 it was apparent that Crenson's alleged acts were unlawful in the light of pre-existing law. *See Anderson*, 483 U.S. at 639.

Plaintiffs have alleged that Crenson violated a constitutional right that was clearly established in 2013, when the allegedly unlawful act was committed.  *See Pearson*, 555 U.S. at 232.  Thus, Crenson is not entitled to qualified immunity,

### 5.  Punitive Damages

The Supreme Court has long held that "a jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."  *Smith v. Wade*, 461 U.S. 30, 56 (1983).   Under Maryland law, "punitive damages may only be awarded on the basis of tortious conduct which is particularly heinous, egregious and reprehensible," and only when established "by clear and convincing evidence."  *Montgomery Ward v. Wilson*, 664 A.2d 916, 932 (Md. 1995).

At present, the Court finds little evidence to suggest that Crenson acted with reckless indifference, let alone malice.[5]  That said, Crenson seeks to dismiss Plaintiffs' claim for punitive damages at too early a stage.  Plaintiffs require discovery to thoroughly develop their allegation that Crenson acted with reckless indifference or malice.  Thus far, Plaintiffs have implied that Crenson had a bad motive sufficient to survive this motion, as evidenced by Animal Control's shifting explanations for terminating Plaintiffs relationship with Animal Control.  (*See* ECF No. 19 at 10-12.)  Doubtful as the Court is, summary judgment would be inappropriate at this early point.

---

[5] To support Plaintiffs' claim for punitive damages, Plaintiffs rely primarily on statements made by Arnot.  (*See* ECF No. 19 at 37-38 (stating that after receiving Crenson's e-mail terminating Plaintiffs as rescue partners, Arnot was "shocked" and felt as though she had been hit "right where it hurt").)  As this case progresses, Plaintiffs cannot rely exclusively on Arnot's own reaction as evidence of Crenson's subjective motive.

In sum, discovery should illuminate the strengths and weaknesses in each party's case. Thus, Crenson's motion for summary judgment will be denied as premature.

## C.      PLAINTIFFS' MOTION TO STRIKE (ECF No. 15)

Plaintiffs filed a motion to strike portions of Crenson's affidavit in support of Crenson's motion for summary judgment.  (ECF No. 15.)  Crenson has since withdrawn some of the evidence that Plaintiffs challenged: Facebook posts and photos submitted as ECF No. 14-4.  (*See* ECF No. 16 at 1 n.1.)  The Court has considered Plaintiffs' remaining objections and found them to be moot.  The Court ruled on this motion for summary judgment without relying on the challenged portions of Crenson's affidavit.  Thus, Plaintiffs' motion to strike will be denied.

## D.      PLAINTIFFS' MOTION FOR LEAVE TO FILE SUPPLEMENTAL AFFIDAVIT (ECF No. 23)

Plaintiffs seek leave to file a supplemental Rule 56(d) affidavit.   (ECF No. 23.) Plaintiffs' motion is now moot because the Court will be denying Crenson's motion for summary judgment.  Thus, Plaintiffs' motion for leave will be denied.

## E.      CONCLUSION

Accordingly, an order shall issue DENYING Defendant's motion for summary judgment (ECF No. 14), DENYING Plaintiffs' motion to strike (ECF No. 15), and DENYING Plaintiffs' motion for leave to file a supplemental affidavit, (ECF No. 23).

DATED this 21st day of January, 2015.

BY THE COURT:

_____/s/_____

James K. Bredar
United States District Judge

13